Kevin M. Fitzpatrick, Esquire (VSB #30716)
4118 Leonard Drive, Suite 200
Fairfax, VA 22030
(703) 352-7150
Counsel for Plaintiff Automotive Finance Corporation

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| IN RE: ) | |
| ) | |
| SALIM ZAMANI, ) | Case No. 17-11618-KHK |
| ) | |
| Debtor. ) | Chapter 7 |
| ) | |
| _____ ) | |
| AUTOMOTIVE FINANCE CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Adversary No. |
| ) | |
| SALIM ZAMANI, ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT TO DETERMINE DISCHARGEABILITY**
**OF DEBT PURSUANT TO 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6)**

Automotive Finance Corporation ("AFC"), by counsel and pursuant to 11 U.S.C. §§ 523(a)(2), 523(a)(4), and 523(a)(6), and Rule 7001 of the Federal Rules of Bankruptcy Procedure, for its Complaint against Salim Zamani ("Zamani"), states as follows:

**I. PARTIES**

1. On May 12, 2017 (the "Petition Date"), Zamani filed a voluntary petition under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Virginia.

2. The deadline to file complaints to determine the dischargeability of debts in Zamani's bankruptcy case is August 14, 2017, which date has not yet passed.

3. Zamani is an individual and, upon information and belief, a resident of Virginia.

4. AFC is an Indiana corporation, and a creditor of Zamani.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

6. Venue of this proceeding is proper in this District pursuant to 28 U.S.C. § 1409.

7. This adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2).

8. AFC consents to the entry of a final judgment in this adversary proceeding.

## III. FACTUAL ALLEGATIONS

### A. The Demand Promissory Note and Security Agreement

9. At all times relevant herein, Zamani was President of Triple Z Motors, Inc. ("Triple Z"), a Virginia corporation.

10. On or about June 27, 2012, Zamani, as President of Triple Z, executed a Demand Promissory Note and Security Agreement (as amended or modified from time to time, the "Note"), pursuant to which Triple Z promised to pay AFC Twenty-Five Thousand Dollars ($25,000), or such greater or lesser principal amount as may be advanced by AFC pursuant thereto, together with interest. A true and accurate copy of the Note is attached as **Exhibit 1**.

11. Under the terms of the Note and to secure Triple Z's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, Triple Z granted AFC a security interest in substantially all of its assets, including inventory, then owned or thereafter acquired.

12. Under the terms of the Note and to secure Triple Z's present and future obligations to AFC under that note and any other instrument, guaranty, or other document, Triple Z also granted AFC a purchase money security interest in all vehicles, parts, and equipment financed by AFC thereunder.

13. On or about June 27, 2012, Zamani also executed an Unconditional and Continuing Guaranty pursuant to which he guaranteed the full and prompt payment of all obligations of Triple Z to AFC under the Note and any other agreement, as amended, supplemented, or modified. A true and accurate copy of the Guaranty is attached to the Note as Exhibit C.

14. AFC properly perfected its security interests in the assets of Triple Z by making the appropriate UCC filings with the Virginia State Corporation Commission. True and accurate copies of AFC's UCC filings are attached as **Exhibit 2**.

15. Between November 25, 2014 and June 22, 2016, Zamani, as President of Triple Z, executed a series of U.S. Aggregate Advance Limit Amendments to Demand Promissory Note and Security Agreement ultimately increasing the aggregate advance limit under the Note to Seven Hundred and Fifty Thousand Dollars ($750,000). Copies of the Aggregate Advance Limit Amendments are attached as **Exhibit 3**.

16. In connection with and as consideration for the advance limit increases under the Note, each time Zamani executed an Aggregate Advance Limit Amendment, he individually reaffirmed the terms and obligations of his Unconditional and Continuing Guaranty.

17. Prior to the Petition Date, Triple Z requested that AFC advance it money and/or extend it credit under the Note, and AFC in fact advanced money to Triple Z and/or extended Triple Z credit under the Note to purchase vehicles for resale.

18. Prior to the Petition Date, Triple Z did not pay all amounts due and owing to AFC in accordance with the terms of the Note, and Triple Z was and is in default thereunder.

### B. The Secured Vehicles

19. Pursuant to the Note, Zamani, on behalf of Triple Z, represented to AFC that Triple Z would hold funds derived from the sale of vehicles purchased by Triple Z financed by AFC under the Note in trust for the benefit of AFC (the "Trust Funds"), and that Triple Z would pay the Trust Funds to AFC in accordance with the terms of the Note.

20. Each time Zamani, on behalf of Triple Z, requested that AFC advance Triple Z money and/or extend Triple Z credit under the Note to finance the purchase of a vehicle, Zamani represented to AFC that Triple Z would pay the Trust Funds derived from the sale of such vehicle to AFC.

21. Based upon those representations, AFC advanced Triple Z money and/or extended Triple Z credit under the Note to purchase vehicles for resale.

22. Prior to the Petition Date, Triple Z sold certain vehicles financed by AFC under the Note (the "Secured Vehicles") but did not pay AFC the Trust Funds derived therefrom. A listing of the Secured Vehicles is attached as **Exhibit 4**.

23. The Secured Vehicles were inventory of Triple Z within the meaning of Section 102(a)(48) of Revised Article 9 of the Uniform Commercial Code.

24. AFC had a security interest in the Secured Vehicles.

25. AFC's security interest in the Secured Vehicles was first priority.

26. Triple Z knew that AFC had a security interest in the Secured Vehicles.

27. Zamani knew that AFC had a security interest in the Secured Vehicles.

28. AFC properly perfected its security interest in the Secured Vehicles.

29. Triple Z knew that AFC had a properly perfected security interest in the Secured Vehicles.

30. Zamani knew that AFC had a properly perfected security interest in the Secured Vehicles.

31. The Trust Funds were proceeds of the Secured Vehicles.

32. AFC had a security interest in the Trust Funds.

33. AFC's security interest in the Trust Funds was first priority.

34. Triple Z knew that AFC had a security interest in the Trust Funds.

35. Zamani knew that AFC had a security interest in the Trust Funds.

36. AFC properly perfected its security interest in the Trust Funds.

37. Triple Z knew that AFC had a properly perfected security interest in the Trust Funds.

38. Zamani knew that AFC had a properly perfected security interest in the Trust Funds.

39. Triple Z knew that it was required to pay the Trust Funds to AFC.

40. Zamani knew that Triple Z was required to pay the Trust Funds to AFC.

41. Triple Z knew that it did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

42. Zamani knew that Triple Z did not have the authority or the consent of AFC to sell, transfer, or otherwise dispose of the Secured Vehicles and not pay AFC the Trust Funds.

43. Triple Z had the ability to pay the Trust Funds to AFC.

44. Prior to the Petition Date, Triple Z, through or at the direction of Zamani, intentionally did not pay AFC the Trust Funds despite knowledge that injury to AFC was substantially certain to occur as a result.

45. Zamani knew that injury to AFC was substantially certain to occur as a result of Triple Z's failure to pay AFC the Trust Funds.

46. By not paying AFC the Trust Funds, Triple Z knowingly forced AFC to take substantially less than what it was owed.

47. By not paying AFC the Trust Funds, Zamani knowingly forced AFC to take substantially less than what it was owed.

48. Triple Z used the Trust Funds for purposes other than paying AFC, including the payment of Triple Z's other creditors and Zamani's personal obligations.

49. Upon information and belief, Zamani used the Trust Funds for purposes other than paying AFC, including the payment of Triple Z's other creditors and Zamani's personal obligations.

50. The amount due and owing from Triple Z to AFC with respect to the Secured Vehicles is approximately $366,153.55 ("the Debt").

### C. Basis for Relief

51. AFC periodically conducts lots audits of its borrowers. One purpose of lot audits is to confirm that vehicles purchased by borrowers and financed by AFC and for which AFC has not yet been paid in full are unsold and constitute inventory of borrowers upon which AFC has properly perfected security interests.

52. On or about March 28, 2017, AFC, by or through its agent, conducted an audit of the lot of Triple Z. During that lot audit, AFC was unable to verify the status of certain vehicles as they were not on Triple Z's lot.

53. During the March 28, 2017 lot audit, Triple Z, through or at the direction of Zamani, represented to AFC that the unverified vehicles remained unsold inventory of Triple Z in which AFC continued to have properly perfected, first priority security interests, and that the vehicles were on their way to auction to be sold or at service shops. In fact, Triple Z, through or at the direction of Zamani, had previously sold those vehicles and had received the Trust Funds but had not paid them and did not pay them to AFC in accordance with the terms of the Note. Had AFC known the true status of the unverified vehicles during the March 28, 2017 lot audit, it would have exercised its rights under the Note.

54. At the 341 meeting of creditors conducted in Zamani's Chapter 7 case on May 13, 2017, Zamani admitted that he used the Trust Funds for purposes other than paying AFC, including for the payment of his personal obligations.

55. Triple Z, through or at the direction of Zamani, induced AFC to continue to make advances under the Note by making false representations to AFC.

56. Triple Z, through or at the direction of Zamani, induced AFC to forbear from exercising its rights under the Note by making false representations to AFC.

57. Triple Z, through or at the direction of Zamani, obtained money, property, and/or an extension of credit from AFC by false pretenses, false representations, and/or actual fraud.

58. At the time Triple Z, through or at the direction of Zamani, made the representations, statements, and/or omissions of material fact to AFC, Triple Z and Zamani knew they were false.

59. Triple Z, through or at the direction of Zamani, made the representations, statements, and/or omissions of material fact to AFC with the intention and purpose of deceiving AFC.

60. AFC relied on the representations, statements, and/or omissions of material fact made by Triple Z, through or at the direction of Zamani.

61. AFC's reliance on the representations, statements, and/or omissions of material fact made by Triple Z, through or at the direction of Zamani, was reasonable.

62. AFC's reliance on the representations, statements, and/or omissions of material fact made by Triple Z, through or at the direction of Zamani, was justified.

63. As a proximate result of the representations, statements, and/or omissions of material fact made by Triple Z, through or at the direction of Zamani, AFC has sustained loss and has been damaged.

64. By executing the Note, AFC and Zamani intended to create an express or technical trust with respect to the Trust Funds.

65. By executing the Note, AFC and Triple Z intended to create an express or technical trust with respect to the Trust Funds.

66. Pursuant to the Note, Zamani was a trustee and AFC was the beneficiary with respect to the Trust Funds.

67. Pursuant to the Note, Triple Z was a trustee and AFC was the beneficiary with respect to the Trust Funds.

68. Zamani expressly agreed that he would hold the Trust Funds in trust for the benefit of AFC.

69. Triple Z expressly agreed that it would hold the Trust Funds in trust for the benefit of AFC.

70. Zamani was clearly put on notice that he was undertaking the special responsibilities of a trustee with respect to the Trust Funds.

71. Triple Z was clearly put on notice that it was undertaking the special responsibilities of a trustee with respect to the Trust Funds.

72. There was a fiduciary relationship between Zamani and AFC with respect to the Trust Funds.

73. There was a fiduciary relationship between Triple Z and AFC with respect to the Trust Funds.

74. AFC was the beneficial owner of the Trust Funds.

75. Neither Zamani nor Triple Z had unrestricted use of the Trust Funds.

76. Neither Zamani nor Triple Z was entitled to treat the Trust Funds as their own.

77. While acting in a fiduciary capacity, Zamani misappropriated the Trust Funds.

78. While acting in a fiduciary capacity, Triple Z misappropriated the Trust Funds.

79. While acting in a fiduciary capacity, Zamani failed to properly account for the Trust Funds.

80. While acting in a fiduciary capacity, Triple Z failed to properly account for the Trust Funds.

81. Zamani appropriated the Trust Funds for his own use or benefit.

82. Triple Z appropriated the Trust Funds for its own use or benefit.

83. Zamani appropriated the Trust Funds with fraudulent intent.

84. Triple Z appropriated the Trust Funds with fraudulent intent.

85. Zamani converted the Trust Funds.

86. Triple Z converted the Trust Funds.

87. The representations, acts, and omissions of material fact made by Triple Z, through or at the direction of Zamani, to AFC were wrongful.

88. The representations, acts, and omissions of material fact made by Triple Z, through or at the direction of Zamani, to AFC were done intentionally.

89. The representations, acts, and omissions of material fact made by Triple Z, through or at the direction of Zamani, to AFC necessarily caused injury to AFC.

90. The representations, acts, and omissions of material fact made by Triple Z, through or at the direction of Zamani, to AFC were done without just cause or excuse.

91. At all times relevant herein, Zamani personally and actively participated in the management of Triple Z, including the disposition of inventory and management of the dealership's financial affairs.

92. As an officer of Triple Z, Zamani is personally liable for the representations, acts, and omissions of material fact made by Triple Z to AFC that are set forth above.

93. Zamani is personally liable for the representations, acts, and omissions of material fact that are set forth above.

94. Pursuant to the Note, AFC is entitled to attorneys' fees, costs, and expenses incurred collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

95. AFC has been required to hire attorneys to collect and enforce the obligations under the Note, and to commence and pursue this proceeding.

96. AFC has incurred attorneys' fees, costs, and expenses collecting and enforcing the obligations under the Note, including the fees and expenses incurred in this proceeding.

### COUNT I: 11 U.S.C. § 523(a)(2)(A)

97. AFC repeats and realleges paragraphs 1-96 above as if fully set forth herein.

98. The Debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extension of credit Triple Z obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Secured Vehicles is a nondischargeable debt of the Zamani's pursuant to 11 U.S.C. § 523(a)(2)(A).

WHEREFORE, AFC prays for: (a) a determination that the Debt, including attorneys' fees, costs, and expenses, arising from the money, property, and/or extensions of credit Triple Z obtained from AFC by false pretenses, false representations, and/or actual fraud related to the Secured Vehicles is a nondischargeable debt of the Zamani's pursuant to 11 U.S.C. § 523(a)(2)(A); and (b) all other proper relief.

### COUNT II: 11 U.S.C. § 523(a)(4)

99. AFC repeats and realleges paragraphs 1-98 above as if fully set forth herein.

100. The Debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a result of defalcation while acting in a fiduciary capacity, and is a nondischargeable debt of the Zamani's pursuant to 11 U.S.C. § 523(a)(4).

WHEREFORE, AFC prays for: (a) a determination that the Debt, including attorneys' fees, costs, and expenses, arising from the failure to pay the Trust Funds to AFC is a nondischargeable debt of the Zamani's pursuant to 11 U.S.C. § 523(a)(4); and (b) all other proper relief.

### COUNT III: 11 U.S.C. § 523(a)(6)

101. AFC repeats and realleges paragraphs 1-100 above as if fully set forth herein.

102. The Debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Secured Vehicles, and AFC's interest therein, is a nondischargeable debt of the Zamani's pursuant to 11 U.S.C. § 523(a)(6).

103. The Debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Trust Funds and AFC's interest therein is a nondischargeable debt of the Zamani's pursuant to 11 U.S.C. § 523(a)(6).

WHEREFORE, AFC prays for: (a) a determination that the Debt, including attorneys' fees, costs, and expenses, arising from the willful and malicious injury to the Secured Vehicles is a nondischargeable debt of Zamani's pursuant to 11 U.S.C. § 523(a)(6); (b) a determination that the Debt, including attorneys' fees, costs, and expenses, arising willful and malicious injury to the Trust Funds and AFC's interest therein is a nondischargeable debt of Zamani's pursuant to 11 U.S.C. § 523(a)(6); and (c) all other proper relief.

THE FITZPATRICK LAW OFFICE, P.C.
Kevin M. Fitzpatrick
4118 Leonard Drive, Suite 200
Fairfax, Virginia 22030
(703) 352-7150


By:     /s/ Kevin M. Fitzpatrick
        Kevin M. Fitzpatrick
        Counsel for Automotive Finance Corporation